# Mayor and Council of Albertville v. Rains *et al.*

*Bill in Equity by Property Owners to Enjoin Collection of Municipal Taxes.*

1. *Sufficiency of bill in equity to enjoin collection of municipal taxes.* A bill in equity by property owners to enjoin the collection of municipal taxes by the municipal authorities which fails to allege that the defendants have taken any steps to coerce payment of the tax, or have done or threatened to do anything indicating a purpose to collect such taxes by trespasses upon the complainants, and which is uncertain in its averments as to the kind of assessment defendants have made. is without equity.

APPEAL from the Chancery Court of Marshall.
Heard before the Hon. S. K. McSPADDEN.
The facts of the case are sufficiently stated in the opinion.

[Mayor and Council of Abertville v. Rains *et al.*]

LUSK & BELL, for the appellants.—The whole bill shows that it has no equity.. The court will not consider one portion of the bill which may tend to show by its averments that complainants are entitled to relief.— *B'ham R. R. Co. v. City of Bessemer*, 98 Ala. 274.

The attack made on the charter of the town of Albertville because of its provision as to schools, in paragraph 20 on the theory that it is unconstitutional, is wholly untenable.—See charter, Acts. 1890–91. pp. 971–981; *Allen v. Intendant and Councilmen of LaFayette*, 89 Ala. 642.

The sole purpose of the bill, in this case is to restrain the collection of a tax which under the strongest light favorable to the complainants, would be only illegal, and a court of equity will not by injunction interfere with the collection of taxes unless in addition to illegality, hardship or irregularity, some recognized ground of equity jurisdiction is shown.—*Strenna v. City Council of Montgomery*, 86 Ala. 340. And authorities cited.

HEAD, J.—This bill is filed by a majority of the citizens and property owners of the town of Albertville, in this State, against the Mayor and Councilmen of that town, praying that they be "released and relieved from any obligation to pay any part of the sum of two hundred and fifty dollars," which the bill alleges has been unlawfully subscribed by the defendants, for the corporation, to the State agricultural college which is now being built within the corporate limits of the town; and that defendants be enjoined from "collecting, or attempting to collect any general taxes or license taxes from the citizens of the corporation of Albertville until the property of said corporation is assessed and the values regulated in proportion to the volume of business and value of trade or profession as the law directs; and until said defendants publish a full and complete report of the financial condition of said corporation."

The town was chartered by special act, February 18, 1891. (Acts 1890–91, p. 971). Full power is given by the charter to the mayor and councilmen to levy taxes on real and personal property, within the town, in order to provide public revenues; and ample procedure and machinery are provided for the assessment and collection of such taxes, with power to sell property, real and

personal, of defaulters.    It is provided in section 12,
that "when books of assessment shall be completed and
returned to the mayor and councilmen, and they have
levied a tax on the property so listed and assessed, the
mayor shall issue his warrant annexed to the tax-list or
book of assessment to the collector of the corporation
tax, which list shall contain the names of the tax-payers,
a description of the real estate, its valuation, and the
taxes assessed thereon, and the amount of personal prop-
erty assessed to each tax-payer, and the tax assessed
thereon, and such tax-list with the warrant annexed,
shall have the force and effect of an execution, and shall be
a preferred lien on all the property within the corporate
limits, or brought within the corporate limits, of every
person assessed with the same over all encumbrances,
except the state and county taxes from the date of the
assessment."    It is further provided in section 17, that
"from every person, firm or corporation, conducting or
carrying on any business, trade, occupation or profes-
sion within the corporate limits of Albertville, the may-
or and councilmen are authorized to collect a license
tax, the amount thereof to be, as far as may be required
by the volume of the business or trade and the value of
the occupation or profession, and to enforce the collec-
tion of such license tax by penalties fixed by ordinance."
Section 20 provides that "the territory embraced within
the corporate limits of Albertville be and the same is
hereby constituted a public school district, and the may-
or and councilmen, for the use of the public schools, are
authorized to collect all poll tax from persons liable
therefor living within the corporate limits of Albertville;
and a payment of such poll tax to the tax collector of
Albertville shall be a full discharge of liability therefor
to the tax collector of Marshall county."    Section 9 au-
thorizes the mayor and councilmen to purchase and pro-
vide for the payment of the same, all personal and real
estate deemed necessary, from time to time, for public
use and convenience, and to construct suitable public
buildings for council chambers, market houses and
school houses.    Section 14 provides that, after giving
notice by advertisement by posting, or in a newspaper
published in Albertville, for twenty days, that the cor-
poration taxes are required to be paid to him on or be-
fore a certain day, it shall be the duty of the tax collec-

tor to enforce the collection of the same by a levy upon and sale of personal property of delinquents &c. The grievances complained of by the original bill are: 1. That in November or December, 1893, the defendants, for the corporation, subscribed $250, to "the State agricultural college, which is now being built within the corporate limits of the town and that complainants, who never authorized or agreed to the subscription, are illegally assessed and taxed by the defendants, and by them called upon and urged to pay said taxes for the purpose of liquidating said subscription arbitrarily subscribed by defendants as aforesaid." 2. That the requirements of said sections 12 and 14 of the charter have not been complied with. 3. That the mayor and councilmen have not sought to equalize the value of property assessed or to provide that the same be assessed at its proper valuation and in accordance with law, but that they are seeking and attempting to assess the property of said corporation without listing the same and to collect the taxes thereon at one and the same time, without authority of law or equity. 4, That defendants have levied and are attempting to collect a license tax on every business and trade in said corporation, which license tax is entirely in excess of the value of business, or value of the trade thus taxed; that they have levied a license tax of forty dollars on the occupation or trade of carpentering or house building, and levied and attempted to collect a license tax on a citizen who built his own house. 5. That defendants have failed to publish the ordinance; failed to observe the police duties, and suffered the streets to go unrepaired and wash-out in ditches and gullies and irreparably damage the property of complainants and other citizens of the town. 6. That these many grievances discourage investments, drive capital from the town and depreciate the value of real estate; that the unlawful and illegal attempt to collect the general taxes of the town for the purpose of paying the subscription aforesaid, redounds to the injury of, and damage to, the property of complainants, who are powerless to protect themselves against the same without equitable intervention, and they will be otherwise forced to await the illegal seizure and sale of their property and then resort to a multiplicity of damage suits at law.

[Mayor and Council of Abertville v. Rains *et al.*]

The defendants moved to dismiss the bill for want of equity, which motion the chancellor sustained, granting leave to amend so as to give it equity. Afterwards, the complainants filed an amendment, setting up the legal conclusion that said section 20 of the charter, "under the provisions of which," the amendment states, "defendants seek to levy and collect said taxes to pay off and discharge said subscription to said college," is violative of section 2, Art. 4 of the constitution of Alabama, which requires that each law shall contain but one subject which shall be clearly expressed in the title; insisting that, as the title of the act is, "To establish a charter for the town of Albertville, in Marshall county, Alabama," the insertion of section 20, establishing the territory within the corporate limits, as a separate school district, introduces a new subject not comprehended within the title. The defendants moved to dismiss the bill, as thus amended, for want of equity; and also to dissolve the injunction. The chancellor overruled these motions, and the appeal is by the defendants from that ruling.

If it were conceded that section 20 of the charter above copied is unconstitutional, as insisted by appellees, we do not think the concession would aid the equity of the bill. We have no brief in behalf of the appellees, and do not know just what line of argument is intended by their counsel, in support of the bill, in respect of the subscription and payment of $250. to the use of the college. There is painful uncertainty arising out of the averments of the bill, as to what form the action of the municipal board has assumed, in the matter of collecting from the people the funds with which to pay this subscription. The first statement is that complainants, who constitute a majority of the citizens and property owners of the town, are illegally assessed and taxed by the defendants, and by them called upon and urged to pay said taxes, for the purpose of liquidating said subscription arbitrarily subscribed by defendants. This averment, as will be noticed, is that the *complainants* have been assessed and taxed; which is to say, that a capitation tax has been levied upon them for the purpose of paying the subscription. Again, in another place, in the bill, it is said, that the unlawful and illegal attempt to collect "*the general taxes of the town*" (italics ours) for the purpose of paying the subscription, aforesaid, redounds to the in-

jury of, and damage to, the property of complainants, who are powerless to protect themselves against the same without equitable intervention, and they will be otherwise forced to await the illegal seizure and sale of their property, and then resort to a multiplicity of damage suits at law. And then in the amendment filed, it is said that defendants "*seek to levy and collect said taxes to pay off and discharge said subscription to said college,*" under the provisions of said section 20 of the charter. Upon reading that section, we see there is no provision for the levy or assessment of any tax whatever by the defendants. They are simply authorized to collect from the citizens of the town, liable therefor, the poll tax of $1.50 *per capita* levied by the State revenue law for the use of the State, the effect of the provision being, if valid, a donation by the State to the town, of the State poll tax, to be used by the town for school purposes, and authorizing the town to collect such tax in the place of the State tax collector. This is all the information the bill gives us, and it requires a power of comprehension surpassing ours to divine just what the defendants have done, in the matter of raising funds to pay said subscription.

It is nowhere alleged that defendants have taken any steps to coerce payment of the tax, whatever may be the form of its assessment. On the contrary the bill negatives, (and, indeed, complains, thereof, as we have already seen) that they have taken any of the steps prescribed by the charter, indicating a purpose to coerce collection of the supposed unlawful tax; nor does it appear that they have done, or threatened, even, to do anything, indicating a purpose to collect it by trespasses upon the complainants. The most we can get out of the bill is, that the defendants have made some sort of an assessment upon complainants, (what sort or form thereof, we know not) and called upon and urged them to pay the same. There is certainly no harm, but possibly a commendable exhibition of public spirit, in the defendants seeking, from the citizens interested therein, voluntary contributions to the erection of an institution of learning in their town.

To our minds there is no equity in the bill. We will reverse the decree and remand the cause, with instructions to the chancellor to dismiss the bill and dissolve the injunction unless the bill is amended so as to give it

equity. If it is desired to prosecute the case further upon amendment introducing better averments than we now have, we commend to counsel a reading of the following cases which we think furnish the principles which govern the restraint of the collection of taxes : *Tallassee Mfg. Co. v. Spigener*, 49 Ala. 262 ; *Ala. Gold Life Ins. Co. v. Lott*, 54 Ala. 499 ; *Selma Bldg. & Loan Ass'n v. Morgan*, 57 Ala. 33 ; *Mayor &c. v. Baldwin, Ib.* 61 ; *Elyton Land Co. v. Ayres*, 62 Ala. 413 ; *City Council of Montgomery v. Sayre*, 65 Ala. 564 ; *Strenna v. City Council of Montgomery*, 86 Ala. 340. See also 10 Am. & Eng. Enc. Law, 857 *et seq.*

Reversed and remanded.